## 29702.  MUSGROVE *v.* THE STATE.

DECIDED NOVEMBER 27, 1942.  REHEARING DENIED DECEMBER 10, 1942.

*P. Z. Geer,* for plaintiff in error.
*Maston O'Neal, solicitor-general,* contra.

BROYLES, C. J.   The accused was convicted of simple larceny (cattle stealing), his motion for a new trial was overruled, and that judgment is assigned as error. The stolen animal was described in the indictment as follows: "A white-face Hereford bull weighing about 750 pounds, marked overbit and underbit and crop in left ear, and marked split and underbit in right ear." The evidence as set forth in the record shows that one witness, not the owner or keeper of the bull, but an attaché of the sheriff's office who recovered the animal, testified that the bull was "a Hereford bull weighing 755 pounds, white faced, marked overbit and underbit and crop in the left ear, and a split and overbit in the right ear." Counsel for the accused contends there was a fatal variance between the allegata and the probata. Ordinarily this would be

true in the majority of cattle-stealing cases, where the animals stolen are not recovered alive and unharmed. In such cases the identification marks in their ears, especially when they have been slaughtered, are often the only means of identifying them. There are exceptions to every rule. In *Wiley* v. *State,* 74 *Ga.* 840, cited in the brief of counsel for the accused, the court said: "Where an indictment charged a defendant with having stolen a white barrow hog, marked with a crop and underbit in each ear, and the prosecutor testified to having lost a white barrow hog with a crop in each ear, *and there was no further identification of the stolen property* [italics ours], this was not sufficient to warrant a verdict of guilty. It is incumbent on the State to show that the property alleged to have been stolen was, in fact, stolen; and if this is not done, the corpus delicti is not established." That case states the rule clearly and distinctly. Where there is a variance between the allegations of the indictment and the proof as to the markings in the ears of the stolen animal, and where there was no other evidence showing that the cow alleged to have been stolen was, in fact, the cow stolen by the accused, there is a fatal variance between the allegata and the probata. But, where, as in the case at bar, the stolen bull was recovered alive and unharmed and brought back to his keeper who positively identified it as the white-faced Hereford bull, and the only bull, that was stolen from him, and where that evidence was not contradicted, even by the defendant's statement to the jury, the variance between the allegations in the indictment and the proof was cured, and the difference between an "underbit" and an "overbit" became immaterial. The uncontradicted evidence for the State demanded a finding that the bull alleged to have been stolen was, in fact, the bull stolen by the accused. The evidence amply authorized the verdict, and the overruling of the general grounds of the motion for new trial was not error.

Special ground 1 assigns error upon an excerpt from the charge on the law of "admissions." The charge was authorized by the evidence, and was not error for any reason assigned. It did not deal with the law of "confessions," and the allegation in the ground that it did so deal is not supported by the language of the charge. Special ground 2 complains of the failure of the court to instruct the jury, without any request, upon the law of circumstantial evi-

dence. The evidence in the case was not wholly circumstantial and therefore, under repeated rulings of the Supreme Court and this court, the failure of the court to charge the law of circumstantial evidence was not error, in the absence of a timely, written request for such a charge. Special ground 3 alleges that the court erred in not charging the jury, even without a written request to do so, as follows: "You look to the evidence and see whether or not any admissions appear therefrom, and it is a question of fact for the jury to determine as to whether or not any admissions have been made by the defendant." The uncontradicted evidence showed that the defendant, freely and voluntarily, made certain admissions to the officers who arrested him. That evidence was not contradicted even by the defendant in his statement to the jury. Therefore, a finding was demanded that he had made such admissions, and there was no issue of fact before the jury on that question. It follows that the failure of the court to give the above-quoted charge was not error, especially in the absence of a request for the charge. Special ground 4 complains of the failure of the court to give, without a request therefor, the following charge: "You look to the evidence and see whether or not any confession appears therefrom, and it is a question of fact for the jury to determine as to whether or not any confession has been made by the defendant." The evidence did not show, or attempt to show, that the defendant had made any confession, and the judge did not instruct the jury on the subject of confessions. If he had done so it would have been error. The ground is without merit.

The overruling of the motion for new trial was not error.

*Judgment affirmed. Gardner, J., concurs specially. MacIntyre, J., dissents.*

GARDNER, J. I specially concur with reference to that assignment of error which contends that there is a fatal variance between the description of the animal in the indictment and the proof. There is no doubt that the earmarks of the animal as alleged and the marks which were proved were at variance. The question is whether, under the whole record, such variance demands a reversal. This presents a very interesting question; one as to which members of this court and of the Supreme Court have seen fit, in applying the rule laid down in former decisions, to give expression of disapproval. The decisions thus referred to are binding, provided, of

course, the facts of a particular case cast it under such previous rule. The rulings are as follows: *Youngblood* v. *State,* 40 *Ga. App.* 514 (150 S. E. 457) ; *Wright* v. *State,* 52 *Ga. App.* 202 (182 S. E. 862) ; *Mosley* v. *State,* 52 *Ga. App.* 650 (184 S. E. 364) ; *Watson* v. *State,* 64 *Ga.* 61 (2) ; *Crenshaw* v. *State,* 64 *Ga.* 449 ; *Wiley* v. *State,* 74 *Ga.* 840; *Berry* v. *State,* 92 *Ga.* 47 (2) (17 S. E. 1006) ; *Haupt* v. *State,* 108 *Ga.* 53 (2) (34 S. E. 313, 75 Am. St. R. 19) ; *Johnson* v. *State,* 119 *Ga.* 257 (2) (45 S. E. 960) ; *McLendon* v. *State,* 121 *Ga.* 158 (48 S. E. 902) ; *Smith* v. *State,* 185 *Ga.* 365 (195 S. E. 144). There are other decisions of both the Supreme Court and this court following the rule announced in the cases above cited.

In *Wright* v. *State,* supra, the late Judge Guerry, concurring specially, made the following statement: "Except that I am constrained by the holding of prior decisions of the Supreme Court and this court, I would merely mark myself dissenting. To my mind, however, when there was never a question about the identity of the car alleged to have been the subject-matter of the theft; the prosecutor having but one car and it a Plymouth sedan 1934 model, gun-metal in color, motor number 5369, it is immaterial whether it be P. E. 5369 as alleged or P. C. 5369 as testified by the witness. There is not the slightest doubt in the mind of a juror, or the court, that the car alleged to have been stolen and the car testified about was one and the same car. The application of the principle in this case reduces the rule to an absurdity, and brings ridicule upon the courts. It is true that the material allegata and probata must conform, but it should not be applied in a case where the difference is only the same as between tweedledum and tweedledee. Whenever there can be raised the slightest question as to the identity of the article described as the subject-matter of a theft it is proper to apply the strict letter of the rule. The rule, as applied in this case, ceases to be a rule of reason, and should therefore cease to be a rule of law. However, I am constrained to follow the strict and literal language of the opinions cited, and concur in the judgment of reversal by reason thereof."

In *Smith* v. *State,* supra, the majority opinion reviewed a number of cases from the Supreme Court and this court on the question, Justice Jenkins specially concurring and Justice Bell dissenting. Justice Jenkins in his special concurrence said: "If, as

recognized in the majority opinion, the purpose of the indictment is to put the defendant on notice of the particular offense of which he is charged so that he may prepare his defense, and to preserve an unerring record of the proceedings as a protection against another indictment on the same charge, and if the indictment and the proved allegations are sufficient to do both of these things, it would not seem that the mere fact that the indictment may contain some unproved additional descriptive averment, 'unnecessarily minute,' made 'with unnecessary particularity,' which does not constitute 'an essential element of the offense' and is 'immaterial,' and which therefore serves no purpose whatever in meeting either of the two stated requirements of a valid indictment, could be taken to avoid a conviction thereunder. All such 'immaterial' and 'unnecessary' averments would seem to amount to nothing more than mere surplusage; and if so, I am unable to follow the process of reasoning which holds that the mere inclusion of any such trivial, immaterial, and useless thing causes it to thereby become vital and material to an otherwise full, clear, and valid indictment. If the averment be one which it is useless to state, it remains useless even if stated. An immaterial thing, so long as in a changing world it remains in fact immaterial, is not changed in quality by its mere statement. Wishes can not be made into horses by their mere expression. If it should be shown that the inclusion of some so-called immaterial fact could work harm to the defendant, then it would follow that the fact was not immaterial. The 'immaterial' neither helps nor harms. For these reasons, I think that the mere omission to prove some trivial, immaterial, additional fact, which has been set forth in an otherwise clear, full, and valid indictment, should not operate to set free one who has been tried and convicted thereunder. This special concurrence suggests a modification of those decisions avoiding convictions by reason of the omission to prove unnecessary and immaterial averments, but does not deal with cases where the allegata and probata are in positive variance." The dissenting opinion of Justice Bell is interesting. He observed: "He admitted his presence at the time and place of the alleged offense, and, so far as here material, merely denied 'that he had any chickens,' as claimed by the prosecutor. If he had made no statement whatever, it might be that he should have been acquitted because of the failure of the State to prove the of-

fense as charged in the indictment." I have carefully examined all of the cases cited by able counsel for plaintiff in error and many more decisions on the question. In view of the facts of the case before us I am clear that the principle discussed and prevailing does not control the case at bar.

The indictment charged that the animal described was owned by Fred Davis. The evidence showed that the wife of the owner had authority to sell and had sold cattle from the herd of her husband. The evidence further showed beyond peradventure that the defendant was found in possession of the animal described in the indictment, having carried it from its range in Baker County, Georgia, to Tallahassee, Florida, and was at the time apprehended in the act of selling the animal in Tallahassee. Aside from the variance between the earmarks described in the indictment and those shown by the proof, the animal was, by other proof, overwhelmingly identified as the one owned by Fred Davis and described in the indictment; and was shown to be the animal which the defendant transported to Tallahassee and which was there seized by the sheriff and returned to the owner. The defendant in his statement admitted that the animal described in the indictment was the one he had transported to Tallahassee and which was there taken from him and returned to Davis in Baker County. He claimed that he had purchased it from Mrs. Davis, the wife of the owner. Under this admission the only issue before the jury was whether or not the defendant had purchased the animal from the owner, Fred Davis, through the wife, Mrs. Fred Davis. The State introduced evidence that the animal had not been sold to the defendant, but that he had stolen it about midnight, driving it from its pasture, loading it on a truck, and carrying it to Tallahassee. The jury did not believe that the defendant had purchased the animal. From such statement of facts and the contentions of the defendant in his statement, it is the opinion of the writer that the defendant waived any variance between the proof and the allegation as to the description of the animal. It would be a puerile mockery of judicial procedure to hold otherwise.

MacIntyre, J., dissenting. 1. The description in the indictment for cattle stealing was "one animal of the male sex and of the species known as cattle, being a white-face Hereford bull weighing about 750 pounds, marked overbit and underbit and crop in

the left ear, and marked split and underbit in right ear, in the value of $60." It is generally recognized among people who deal in cattle that the most distinctive mark that is known by which cattle may be identified is what is called the "earmark," and where the earmark of the bull alleged to have been stolen was one thing and the earmark proved was a different one this was a fatal variance. "Though it was unnecessary to have described the animal by the earmarks, yet the descriptive terms of the indictment having gone to this extent, the burden was assumed of proving the specific marks alleged." *Crenshaw* v. *State*, 64 *Ga.* 449. Again, the Supreme Court has said: "While it is not essential, in an indictment for the larceny of an animal, to describe it by earmarks, yet, if this be done, the description must be proved as laid." *Robertson* v. *State*, 97 *Ga.* 206 (22 S. E. 974). And in a case of·this character the Supreme Court has in effect said, in answer to a certified question from this court, that the failure to prove the earmark as laid "Is a case of omission of evidence to prove a material descriptive averment alleged in the accusation." *Smith* v. *State*, 185 *Ga.* 365, 368 (195 S. E. 144). Whatever may be my opinion about this rule, I feel bound by the former decisions of this court and the Supreme Court which I think have ruled that there is a material variance between the allegation in the indictment and the proof upon the trial of the case. The instant case is not one in which the description in the indictment is made more certain and added to by supplemental evidence, but it is one where the evidence contradicts the description in the indictment. The animal being described as marked with one earmark and the animal proved being marked with another earmark, the supplemental description in the evidence could not overcome or wipe out the variance between the earmark alleged and the earmark proved. The earmark alleged and the one proved being so contradictory, they could not be reconciled as being the same earmark and thus describing the same animal. Irrespective of whatever else the State may have proved, it failed to prove this material averment alleged in the indictment, and this failure, as I understand it, was fatal to the State's case under the rule of law stated by the Supreme Court in answer to a certified question from this court in *Smith* v. *State,* supra. I think the judgment should be reversed.